■ EMIL EAMOTTE, Appellant, v EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA, Defendant and Third-Party Plaintiff Respondent-Appellant. AL GROVER'S MARINE BASE, INC., et al., Third-Party Defendants-Respondents.—In an action upon a theft insurance policy for the value of a stolen yacht, plaintiff and defendant third-party plaintiff appeal from separate judgments of the Supreme Court, Nassau County, made after a nonjury trial, as follows: (1) plaintiff from a judgment entered May 30, 1974, which dismissed the complaint; and (2) defendant third-party plaintiff from a judgment entered April 26, 1974, which dismissed its third-party complaint. Judgment entered May 30, 1974 reversed, on the law and the facts, with costs to plaintiff against defendant, and plaintiff is awarded judgment against defendant in the amount of $28,500. Judgment entered April 26, 1974 reversed, on the law and the facts, third-party action severed, and new trial granted thereon, with costs to abide the event. Plaintiff purchased a new yacht from the third-party defendants in March, 1970. The third-party defendants (to be referred to herein as "Grover's Boatyard") operated a new boat sales agency in Freeport, New York. On March 15, 1970 the defendant insurer issued a theft insurance policy on the yacht to plaintiff in the amount of $28,500 for the term from March 15, 1970 to March 15, 1971. The policy contained the following lay-up warranty: "Warranted that the Yacht be laid up and out of commission from November 15th to March 15th." In July, 1970, plaintiff brought the yacht back to Grover's Boatyard in order to have it sold by Grover. Plaintiff instructed Grover's Boatyard to leave the boat in the water and to try to sell it on a commission basis. Plaintiff left the keys in Grover's office and, during the next few months, removed all of his personal belongings from the yacht, as well as a ship-to-shore radio, a depth recorder and a long range navigation machine. In response to a query from Grover's Boatyard, plaintiff had the boat winterized for approximately $85. The boat, however, remained docked in the water at Grover's Boatyard until December 22, 1970, when it was stolen. Plaintiff instituted an action against the defendant insurer for the agreed valuation of the yacht pursuant to the terms of the policy. Plaintiff alleged that he had complied with the lay-up warranty in the policy. Defendant contended that plaintiff breached that warranty and that he was thereby precluded from recovery.

The defendant insurer impleaded Al Grover and his corporate entity, claiming that they were negligent in failing to exercise due care in the storage of the yacht, resulting in its loss. After a nonjury trial, the trial court dismissed the complaint and the third-party complaint, holding, *inter alia,* and quite properly, that "the criteria to be applied in determining whether the plaintiff complied with the warranty is whether the action taken by him [the insured] conforms with the well-established local custom and practice as to laying up similar vessels in the particular area where the yacht was kept" (see *Gelb v Automobile Ins. Co. of Hartford, Conn.,* 168 F2d 774, 775). The trial court found that the practice of the boatyard in question was to lay the boat up on land and that plaintiff, despite his act of winterizing the boat, violated the lay-up warranty by leaving the boat in the water. In our view, the trial court erred in so finding. At the trial, plaintiff's expert, a marine mechanic, testified that the custom and practice of marinas in Freeport and throughout Long Island was to lay boats up in either dry or wet storage. In wet storage, the boat is kept in the water and put through a multistep winterizing process. This process, according to the witness, satisfied the lay-up warranty of the policy. Plaintiff's expert was shown the bill received by plaintiff for winterizing the boat, and testified that the work listed thereon, if in fact performed, would constitute a lay-up of the boat pursuant to the policy. Defendant called Grover as its expert witness. He testified that his business differed from that of the general boatyards whose practices were described by plaintiff's expert. Grover testified that his "operation" was primarily a new boat sales agency and that he also stored several of his customers' boats for sale on a brokerage basis. Grover further testified that the latter boats were kept in his boatyard only in dry storage from the fall to the spring. However, Grover admitted that wet storage is a prevalent custom in marinas throughout Long Island and that the boats that he himself owned were kept in wet storage, during the winter, at his boatyard. Accordingly, we find that wet storage was an accepted means of having a yacht "laid up and out of commission" throughout Freeport and Long Island, generally, and in Grover's Boatyard, in particular. Moreover, it should be noted that the printed application for the theft insurance policy prepared by the insurer lists the following items to be filled in by the applicant: "Lay-up location" and "Afloat or Ashore". This form indicates that a boat may be laid up and out of commission in either wet storage or dry storage. Plaintiff did not indicate on the application whether the boat would be laid up afloat or ashore. He was nevertheless issued the theft policy containing the lay-up warranty. The law is well settled that "in contracts of insurance where a doubt exists as to the meaning of words contained therein which may be construed either in a strictly literal sense or in a broad sense, that these words must be given the broad meaning because the insurance carrier has it within its power to spell out clearly all of the terms and conditions in plain, concise, unambiguous, and understandable language. Failing to do so, the words in question must be construed against it" *(Providence Washington Ins. Co. v Lovett,* 119 F Supp 371, 375). Accordingly, the lay-up warranty of the policy must be read to include wet storage as well as dry storage. Plaintiff therefore complied with the warranty when he had the boat winterized and left in the water. As we have granted judgment in favor of plaintiff against the defendant insurer, we have severed the third-party action and granted a new trial thereon. Hopkins, Acting P. J., Christ, Brennan and Munder, JJ., concur; Cohalan, J., dissents and votes to affirm upon the result reached at Trial Term.